Jon H. Weiner, OSB #993944
jweiner@nw-attorneys.com
Law Office of Jon Weiner
1595 Commercial Street NE
Salem, OR 97301
Tel: (503) 399-7001
Fax: (503) 399-0745

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| SHAYLA MITCHELL and NATALIE RAMIREZ, | Case No. _____ |
| Plaintiffs, | **COMPLAINT-** |
| v. | **Claims for violations of minimum wage and overtime compensation provisions of the Fair Labor Standards Act (FLSA), 29 USC §§ 206, 207, 216(b); State law claims for Unpaid Overtime and Minimum Wages, and Failure to Timely Pay Wages Due and Owing Upon Termination of Employment, ORS 652.140, ORS 652.150, ORS 653.025,ORS 653.055, ORS 653.261;** |
| HEYOU RAYMOND LIN, AMY LIN, WINDJAMMERS HOLDING, INC., an Oregon domestic business corporation, GIORGIO'S HOLDING, INC., an Oregon domestic business corporation, PINE ST. PUB, INC., an Oregon domestic business corporation, ALL STARS HOLDING, INC., an Oregon domestic business corporation, MARIO'S HOLDING COMPANY, an Oregon domestic business corporation, ALL STARS SPORTS GRILL LANCASTER, INC., an Oregon domestic business corporation, | **(Demand for Jury Trial)** |
| Defendants. | |

Page 1 of 21 – COMPLAINT

_____

Plaintiff alleges:

PRELIMINARY STATEMENT

1.

Plaintiffs Shayla Mitchell ("Mitchell") and Natalie Ramirez ("Ramirez") (hereinafter collectively referred to as "plaintiffs") assert claims for wage and hour violations under state and federal law. Plaintiffs demand a jury trial. The allegations set forth below apply to "all times relevant" without regard to whether those allegations are set forth in the present or past tense.

JURISDICTION

2.

This Court has federal question jurisdiction over Plaintiffs' Fair Labor Standards Act (FLSA) claims pursuant to 28 USC § 1331, since this action is authorized and instituted pursuant to 29 USC § 216(b). This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 USC § 1367. Plaintiffs' state law claims are so closely related to their federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

VENUE

3.

Venue is appropriate in this Court under 28 USC. § 1391 because the events giving rise to this complaint occurred in Marion County, Oregon. Plaintiffs are residents of Salem, Oregon. Defendants Windjammers Holding Inc., Giorgio's Holding, Inc., Pine St. Pub, Inc., All Stars Holding Inc., Mario's Holding Company and All Stars Sports Grill Lancaster Inc. are each and every one an Oregon domestic business corporation with its principle place of business located in

Page 2 of 21 – COMPLAINT

Marion County, Oregon.

4.

At all times relevant, Windjammers Holding, Inc., Giorgio's Holding, Inc., Pine St. Pub, Inc., All Stars Holding, Inc., Mario's Holding Company and All Stars Sports Grill Lancaster, Inc. employed plaintiffs at their respective Salem, Oregon and/or Keizer, Oregon retail establishments, and conducted regular, substantial, and sustained business activity in the State of Oregon, including but not limited to Marion County.

**FACTUAL ALLEGATIONS**

**(Common to All Claims)**

5.

During the term of plaintiffs' employment with Windjammers Holding, Inc., Giorgio's Holding, Inc., Pine St. Pub, Inc., All Stars Holding, Inc., Mario's Holding Company and All Stars Sports Grill Lancaster, Inc. all of their work was subject to the requirements of the FLSA and Oregon's state wage and hour laws.  Plaintiffs were engaged in commerce for purposes of the FLSA, and worked on or otherwise handled goods moving in interstate commerce.   Upon information and belief, each of these domestic corporations enjoyed a gross income exceeding $500,000.

6.

Amy Lin and Heyou Raymond Lin (Raymond Lin) and are married to one another, and are hereafter collectively referred to as the Lins.

Page 3 of 21 – COMPLAINT

7.

Amy Lin is the president of Windjammer's Holding, Inc. and Raymond Lin is the secretary.  The Lins possess a controlling interest in, and exercise operational control over, that entity.  Windjammer's Holding, Inc. does business as Windjammer's Restaurant (Windjammers), a retail dining establishment serving food and alcohol.

8.

Raymond Lin is the president of Giorgio's Holding, Inc. and Amy Lin is the secretary. The Lins possess a controlling interest in, and exercise operational control over, that entity. Giorgio's Holding, Inc. does business as Giorgio's Bar and Grill (Giorgio's), a retail dining establishment serving food and alcohol.

9.

Raymond Lin is the president of Pine St. Pub, Inc. and Amy Lin is the secretary.  The Lins possess a controlling interest in, and exercise operational control over, that entity.  Pine St. Pub, Inc. does business as Pine St. Pub, a retail dining establishment serving food and alcohol.

10.

Amy Lin is the president of All Stars Holding, Inc. and Raymond Lin is the secretary. The Lins possess a controlling interest in, and exercise operational control over, that entity.   All Stars Holding, Inc. does business as All Stars Sports Grill (All Stars), a retail dining establishment serving food and alcohol.

Page 4 of 21 – COMPLAINT

11.

Raymond Lin is the president of Mario's Holding Company and Amy Lin is the secretary.  The Lins possess a controlling interest in, and exercise operational control over, that entity.   Mario's Holding Company does business as Mario's Bar (Mario's), a retail dining establishment serving food and alcohol.

12.

Amy Lin is the president of All Stars Sports Grill Lancaster, Inc. and Raymond Lin is the secretary.   The Lins possess a controlling interest in, and exercise operational control over, that entity.    All Stars Sports Grill Lancaster In does business as Barfly's Grill (Barfly's), a retail dining establishment serving food and alcohol.

13.

Together, Windjammers Holding, Inc., Giorgio's Holding, Inc., Pine St. Pub, Inc., All Stars Holding, Inc., Mario's Holding Company and All Stars Sports Grill Lancaster, Inc. comprise one single integrated enterprise, under the ownership and control of the Lins, engaged in commerce for purposes of the FLSA.  The corporate defendants share common ownership. Financial control is centralized within a single office through which payroll is maintained for each corporate defendant.  The corporate defendants share common management and interrelated operations.  Agents of the Lins individually perform management duties for multiple corporations within the integrated enterprise.   These agents schedule and move defendants' employees, including plaintiffs, from one corporate defendant to another based upon the needs of the integrated enterprise.  The aforementioned integrated enterprise (hereinafter "the Lin enterprise") enjoys a gross volume of sales in excess of $500,000.

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1595 Commercial Street NE, Salem, OR 97301
Tel. (503)399-7001  Fax (503)399-0745

14.

Defendants Amy Lin and Raymond Lin possess a controlling interest in the Lin enterprise, each of its component corporate defendants, and the retail dining establishments through which they do business: Windjammers, Giorgio's, Pine St. Pub, All Stars, Mario's and Barfly's.  The Lins are each actively involved in managing and operating the Lin enterprise, each of its component corporate defendants, and the retail dining establishments through which they do business.  They are each responsible for, and have ultimate decision-making authority over, the processing of payroll, payroll policy and practices, scheduling, and all other personnel matters, (including hiring and firing).  The Lins, the Lin enterprise, and each corporate component of the Lin enterprise were plaintiffs' employers for purposes of the FLSA and Oregon wage-and-hour laws. Each defendant is individually and jointly-and-severally liable as to each of the claims asserted against that defendant below.

15.

Plaintiffs received no work breaks during the course of their employment with the Lin enterprise.  Although plaintiffs each performed more than forty hours of work during single workweeks on a regular basis for the Lin enterprise, defendants failed to compensate them at a rate not less than one and one-half times their regular rate of pay for hours worked in excess of 40 hours per week.  Moreover, defendants failed to pay Ramirez the statutorily mandated wages to which she was due.

16.

In general, evening shifts for the corporations contained within the Lin enterprise lasted a minimum of 8.5 hours.  Plaintiffs were generally scheduled to work these shifts from 6:00 pm to 2:30 am, at which time the respective establishments where they labored would close to the

Page 6 of 21 – COMPLAINT

public.  After 2:30 am, plaintiffs would perform closing duties pursuant to their employment. These duties generally lasted between ½ hour and an hour per shift.

### (Facts Specific to Mitchell)

17.

On or about January, 2012, Mitchell was employed by the Lin enterprise to work at Giorgio's as a bartender for the orally agreed upon compensation of minimum wages, plus tips. She was hired after interviewing with Richard Giddons, manager of Giorgio's and an agent of the Lins.  Mr. Giddons performed managerial duties for multiple corporations within the Lin enterprise.  At this time, Mitchell was not made aware that she would be required to work for any of the other corporations within the Lin enterprise.

18.

Mitchell was originally scheduled to work four, 8.5-hour shifts a week at Giorgio's. These were day shifts which generally took place on Sundays, Mondays, Thursdays and Saturdays.

19.

 Shortly after hire, Mitchell was told that she would be required to work shifts as a bartender and/or "cocktailer" at other establishments within the Lin enterprise.  These shifts were in addition to the work she performed at Giorgio's.

20.

Approximately two to three weeks after hire, Raymond began employment at All Stars, where she worked evening shifts as a bartender and/or cocktailer.  Shortly thereafter, she began employment at Pine St. Pub, where she worked evening shifts as a bartender and/or cocktailer. She would rotate evening shifts among these corporations on an as-needed basis.

Page 7 of 21 – COMPLAINT

21.

At this time, Mitchell occasionally worked in excess of forty hours per work week.  This includes work she performed for Giorgio's, All Stars, and Pine St. Pub.

22.

On or about the first week of May, 2012, the week of Cinco Day Mayo, Mitchell worked three shifts at All Stars.  These shifts were in addition to her regularly scheduled shifts with Giorgio's.

23.

At various times, Mitchell communicated her desire to cease working for one of the establishments within the Lin enterprise.   She did so by verbally informing Katherine Van Fleet, an agent of the Lins.  Ms. Van Fleet performed management and accounting duties for several of the corporations within the Lin enterprise.  Ms. Van Fleet responded by saying, "You quit one, you quit them all."

24.

On or about May, 2012, Mitchell asked Ms. Van Fleet whether she was entitled to overtime compensation for the work she was performing in excess of forty hours a week.  Ms. Van Fleet told Raymond that she was not entitled to overtime wages because "each bar is its own entity".   At all times during her employment with defendants, Mitchell's compensation for all corporate defendants was processed through a single central office.

25.

On or about May, 2012, Mitchell began employment at Windjammers, where she worked evening shifts as a bartender and/or cocktailer.

Page 8 of 21 – COMPLAINT

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1595 Commercial Street NE, Salem, OR 97301
Tel. (503)399-7001  Fax (503)399-0745

26.

On or about June, 2012, Mitchell began working a consistent schedule at Windjammers. She regularly worked three evening shifts a week.  These shifts took place on Wednesdays, Thursdays and Fridays, and were regularly at least 9 hours in duration, depending upon how long it took Mitchell to perform closing duties.  These shifts were in addition to the four, 8.5 hour day shifts she was working each workday at Giorgio's.

27.

Mitchell was working a minimum of approximately 61 hours a week during this time. She continued to work additional shifts for All Stars, Pine St. Pub, Giorgio's and Windjammers on an as-needed basis, as communicated to her through the Lins or one of their agents.

28.

On or about August, 2012, Mitchell ceased working her Thursday day shift at Giorgio's.

29.

On or about September, 2012, Mitchell ceased working her Saturday day shift at Giorgio's.

30.

On or about October, 2012, Mitchell began working a consistent schedule of four evening shifts at Windjammers – Wednesday through Saturday –  and one evening shift at Giorgio's, on Tuesdays.  Each shift was regularly at least 9 hours in duration.  In addition, Mitchell continued to work additional hours for Giorgio's, Windjammers, Pine St. Pub and/or All Stars on an as-needed basis, as communicated to her through the Lins or one of their agents.

31.

Mitchell worked a minimum of 45 hours per week during this period of time.

Page 9 of 21 – COMPLAINT

32.

Mitchell continued working at this rate through July, 2013.

33.

On or about July 17, 2013, Mitchell's employment with the Lins, the Lin enterprise, and each of its component parts ended.

**(Facts Specific to Ramirez)**

34.

On or about November, 2012, Ramirez was employed by the Lin enterprise to work at Pine St. Pub as a bartender for the orally agreed upon compensation of minimum wages, plus tips. She was hired after interviewing with Daryl, an agent of the Lins who performed management duties for several of the corporations within the Lin enterprise.

35.

On or about November, 2012, Ramirez began employment at Mario's, where she worked shifts as a bartender and/or cocktailer. These shifts were in addition to the work she performed for Pine St. Pub.

36.

Shortly thereafter, Ramirez began employment at Windjammers, where she worked shifts as a bartender and/or cocktailer. She would rotate shifts among Windjammers, Mario's and Pine St. Pub on an as-needed basis, as communicated to her through the Lins or one of their agents.

37.

At first, Ramirez was not given a consistent work schedule. She worked shifts for the corporations within the Lin enterprise depending on the needs of the integrated enterprise. At all times during her employment, Ramirez's compensation for all corporate defendants was

Page 10 of 21 – COMPLAINT

processed through a single central office.

38.

On or about April, 2013, Ramirez began employment at BarFly's, where she worked shifts as a bartender and/or cocktailer.

39.

From the time she began employment at BarFly's, Ramirez worked a consistent schedule for the corporations within the Lin enterprise. That schedule was as follows: Saturdays – evening shift at Mario's; Sundays – evening shift at either Mario's or Pine St. Pub; Mondays – evening shift at Mario's; Tuesdays – evening shift at Barfly's; Fridays – day shift at Barfly's and evening shift at Mario's. Each shift was regularly at least 9 hours in duration.

40.

As previously mentioned, the length of an evening shift varied depending on how long it took plaintiffs to perform closing duties. The establishments generally closed around 2:30 am, after which time plaintiffs would continue to work until they had completed all of their required duties.

41.

Ramirez worked a minimum of 54 hours per week during this period of time. She continued to receive no breaks while working at any of the corporations within the Lin enterprise.

42.

On or about June, 2013, Ramirez was told by Daryl that it was "ridiculous she was staying so late" to perform closing duties. Frustrated, Ramirez suggested that Daryl alter her timecard to make it appear as though she had clocked out at 2:30 am, when the bar closed and

Page 11 of 21 – COMPLAINT

before she had performed closing duties.  Daryl altered her timecard in this manner on two or three occasions.

43.

 Following her conversation with Daryl, Ramirez clocked out early for every evening shift she worked, after which time she continued to work, uncompensated, until the closing duties were complete.  On more than one occasion, she verbally informed Daryl that she was clocking out of shifts early and continuing to work without compensation.   Daryl had no response to this information.

44.

Ramirez worked approximately five evening shifts a week during this time, and averaged approximately 1 – 4 hours a week in entirely uncompensated labor.

45.

Ramirez continued working at this rate through November, 2013.

46.

On or about December 9, 2013, Ramirez was terminated from her employment with the Lins, the Lin enterprise, and each of its component parts.

## FIRST CLAIM – VIOLATIONS OF FLSA

## Mitchell against Amy Lin, Raymond Lin, Windjammers Holding, Inc , Giorgio's Holding, Inc., All Stars Holding, Inc., and Pine St. Pub, Inc.

### (Count 1 – Failure to Pay Overtime Compensation under FLSA)

47.

Plaintiff incorporates and realleges paragraphs 1 through 46 by this reference. Pursuant to 29 USC § 207, "no employer shall employ any of his employees who in any workweek is

Page 12 of 21 – COMPLAINT

engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Defendants willfully violated these provisions when they failed to compensate Mitchell at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week.

48.

Pursuant to 29 USC § 207, Mitchell is entitled to overtime compensation for the overtime hours worked for which she has not been compensated, in an amount to be determined at trial. Pursuant to 29 USC § 216(b), Mitchell is also entitled to an equal amount in liquidated damages in addition to reasonable attorney fees and costs, each in an amount to be determined at trial.

## SECOND CLAIM – VIOLATIONS OF FLSA

## Ramirez against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Pine St. Pub, Inc., Mario's Holding Company, All Stars Sports Grill Lancaster, Inc.

### (Count 1 – Failure to Pay Minimum Wage under FLSA)

49.

Plaintiff incorporates and realleges paragraphs 1 through 48 by this reference. Pursuant to 29 USC § 206, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: …not less than (A) $5.85 an hour, beginning on the 60th day after May 27, 2007; (B) $6.55 an hour, beginning 12 months after that 60th day; and (C) $7.25 an hour, beginning 24

Page 13 of 21 – COMPLAINT

months after that 60th day…[.]"  Defendants willfully violated this provision when they failed to pay Ramirez at least minimum wages for all hours worked.

50.

Pursuant to 29 USC § 206, Ramriez is entitled to compensation for her unpaid minimum wages, in an amount to be determined at trial.  Pursuant to 29 USC § 216(b), Ramirez is also entitled to an equal amount in liquidated damages in addition to reasonable attorney fees and costs, each in an amount to be determined at trial.

**(Count 2 – Failure to Pay Overtime Compensation under FLSA)**

51.

Plaintiff incorporates and realleges paragraphs 1 through 50 by this reference.  Pursuant to 29 USC § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  Defendants willfully violated these provisions when they failed to compensate Ramirez at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week.

52.

Pursuant to 29 USC § 207, Ramirez is entitled to overtime compensation for the overtime hours worked for which she has not been compensated, in an amount to be determined at trial. Pursuant to 29 USC § 216(b), Ramirez is also entitled to an equal amount in liquidated damages in addition to reasonable attorney fees and costs, each in an amount to be determined at trial.

Page 14 of 21 – COMPLAINT

## THIRD CLAIM – STATE OVERTIME VIOLATIONS

**Mitchell against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Giorgio's Holding, Inc., All Stars Holding, Inc., and Pine St. Pub, Inc.**

**(Count 1 – Violation of Overtime Laws, ORS 652.150, ORS 652.200, ORS 653.055, ORS 653.261, OAR 839-020-0030)**

53.

Plaintiff incorporates and realleges paragraphs 1 through 52 by this reference.  Pursuant to ORS 653.055: "Any employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected: (a) For the full amount of the wages, less any amount actually paid to the employee by the employer; and (b) For civil penalties provided in ORS 652.150."  Pursuant to ORS 653.261 and OAR 839-020-0030, "all work performed in excess of forty (40) hours per week must be paid for at the rate of not less than one and one-half times the regular rate of pay when computed without benefits of commissions, overrides, spiffs, bonuses, tips or similar benefits pursuant to ORS 653.261(1)."  Defendants willfully violated these provisions when they failed to compensate Mitchell at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week.

54.

Pursuant to ORS 653.261 and OAR 839-020-0030, Mitchell is entitled to compensation for unpaid overtime, in an amount to be determined at trial.  Pursuant to ORS 653.055 and ORS 652.150, she is also entitled to penalty wages.  Pursuant to ORS 653.055(4) and ORS 652.200, Mitchell is also entitled to her reasonable attorney fees and costs.

## FOURTH CLAIM – STATE MINIMUM WAGE AND OVERTIME VIOLATIONS

Page 15 of 21 – COMPLAINT

<u>**Ramirez against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Pine St. Pub, Inc.,**</u>

<u>**Mario's Holding Company, All Stars Sports Grill Lancaster, Inc.**</u>

**(Count 1 – Violation of Minimum Wage Laws, ORS 652.150, ORS 652.200, ORS 653.025,**

**ORS 653.055)**

55.

Plaintiff incorporates and realleges paragraphs 1 through 54 by this reference.  Pursuant to ORS 653.055: "Any employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected: (a) For the full amount of the wages, less any amount actually paid to the employee by the employer; and (b) For civil penalties provided in ORS 652.150."  Pursuant to ORS 653.025, "for each hour of work time that the employee is gainfully employed, no employer shall employ or agree to employ any employee at wages computed at a rate lower than…[f]or calendar years after 2003, a rate adjusted for inflation.  Oregon minimum wage was at the following rates for the years of 2007-2013: $7.80 (2007), $7.95 (2008), $8.40 (2009 & 2010), $8.50 (2011), $8.80 (2012), $8.95 (2013).  Defendants willfully violated this provision when they failed to pay Ramirez at least minimum wages for all hours worked.

56.

Pursuant to ORS 652.025 and 653.055, Ramirez is entitled to compensation for the unpaid minimum wages, in an amount to be determined at trial.  Pursuant to ORS 653.055 and ORS 652.150, she is also entitled to penalty wages.  Pursuant to ORS 653.055(4) and ORS 652.200, Ramirez is also entitled to her reasonable attorney fees and costs.

**(Count 2 – Violation of Overtime Laws, ORS 652.150, ORS 653.055, ORS 653.261, OAR**

**839-020-0030)**

Page 16 of 21 – COMPLAINT

57.

Plaintiff incorporates and realleges paragraphs 1 through 56 by this reference.  Pursuant to ORS 653.261 and OAR 839-020-0030, "all work performed in excess of forty (40) hours per week must be paid for at the rate of not less than one and one-half times the regular rate of pay when computed without benefits of commissions, overrides, spiffs, bonuses, tips or similar benefits pursuant to ORS 653.261(1)."  Defendants willfully violated this provision when they failed to compensate Ramirez at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week, as required.

58.

Pursuant to ORS 653.261 and OAR 839-020-0030, Ramirez is entitled to compensation for unpaid overtime, in an amount to be determined at trial.  Pursuant to ORS 653.055 and ORS 652.150, she is also entitled to penalty wages.  Pursuant to ORS 653.055(4) and ORS 652.200, Ramirez is also entitled to her reasonable attorney fees and costs.

**FIFTH CLAIM – VIOLATION OF ORS 652.140**

**Mitchell against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Giorgio's Holding, Inc., All Stars Holding, Inc., and Pine St. Pub, Inc.**

**(Failure to Pay Wages Upon Termination of Employment)**

59.

Plaintiff incorporates and realleges paragraphs 1 through 58 by this reference.  Pursuant to ORS 652.140, an employee is entitled to all wages unpaid and owing at termination of employment.  Pursuant to ORS 652.150, an employee is entitled to payment of those wages and up to 30 days' penalty wages in addition to reasonable attorney fees and costs (penalty wages being defined as eight hours pay for each day that wages remain unpaid, subject to a cap of 30

Page 17 of 21 – COMPLAINT

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1595 Commercial Street NE, Salem, OR 97301
Tel. (503)399-7001  Fax (503)399-0745

days' penalty wages).

60.

At the time of the termination of her employment with defendants, Mitchell was owed unpaid overtime compensation under the FLSA.  That compensation was not timely paid upon termination of her employment, as required under ORS 652.140 and ORS 652.150.

61.

Pursuant to ORS 652.140 and ORS 652.150, Mitchell is entitled to payment of unpaid overtime compensation, plus 30 days' penalty wages, all in an amount to be determined at trial. Mitchell is also entitled to her reasonable costs and attorney fees under ORS 652.200.

### SIXTH CLAIM – VIOLATION OF ORS 652.140

### Ramirez against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Pine St. Pub, Inc., Mario's Holding Company, All Stars Sports Grill Lancaster, Inc.

**(Failure to Pay Wages Upon Termination of Employment)**

62.

Plaintiff incorporates and realleges paragraphs 1 through 61 by this reference.  Pursuant to ORS 652.140, an employee is entitled to all wages unpaid and owing at termination of employment.  Pursuant to ORS 652.150, an employee is entitled to payment of those wages and up to 30 days' penalty wages in addition to reasonable attorney fees and costs (penalty wages being defined as eight hours pay for each day that wages remain unpaid, subject to a cap of 30 days' penalty wages).

63.

At the time of the termination of her employment with defendants, Ramirez was owed unpaid minimum wages and overtime compensation under the FLSA.  That compensation was not timely

Page 18 of 21 – COMPLAINT

paid upon termination of her employment, as required under ORS 652.140 and ORS 652.150.

64.

Pursuant to ORS 652.140 and ORS 652.150, Ramirez is entitled to payment of unpaid minimum wages and overtime compensation, plus 30 days' penalty wages, all in an amount to be determined at trial.  Ramirez is also entitled to her reasonable costs and attorney fees under ORS 652.200.

WHEREFORE, Plaintiffs demand the following for their claims for relief which is more specifically set forth under the various claims:

1.    First Claim for Relief –Mitchell against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Giorgio's Holding, Inc., All Stars Holding, Inc., and Pine St. Pub, Inc.:

   A.    Unpaid overtime compensation and liquidated damages in an amount to be determined at the time of trial, in addition to reasonable attorney fees and costs pursuant to 29 USC § 216(b).

2.    Second Claim for Relief – Ramirez against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Pine St. Pub, Inc., Mario's Holding Company, All Stars Sports Grill Lancaster, Inc.:

   A.    Unpaid minimum wages and liquidated damages in an amount to be determined at the time of trial, in addition to reasonable attorney fees and costs pursuant to 29 USC § 216(b).

   B.    Unpaid overtime compensation and liquidated damages in an amount to be determined at the time of trial, in addition to reasonable attorney fees and costs pursuant to 29 USC § 216(b).

3.    Third Claim for Relief – Mitchell against Amy Lin, Raymond Lin, Windjammers

Page 19 of 21 – COMPLAINT

Holding, Inc., Giorgio's Holding, Inc., All Stars Holding, Inc., and Pine St. Pub, Inc.:

A.  Unpaid overtime wages and penalty wages, in an amount to be determined at trial, as well as any equitable relief deemed appropriate by the court, in addition to reasonable attorney fees and costs pursuant to ORS 653.055(1), (2), and (4); ORS 652.200; ORS 652.140; and ORS 652.150.

4.    Fourth Claim for Relief – Ramirez against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Pine St. Pub, Inc., Mario's Holding Company, All Stars Sports Grill Lancaster, Inc.:

A.  Unpaid overtime wages, unpaid wages (including unpaid minimum wages), and penalty wages, in an amount to be determined at trial, as well as any equitable relief deemed appropriate by the court, in addition to reasonable attorney fees and costs pursuant to ORS 653.055(1), (2), and (4); ORS 652.200; ORS 652.140; and ORS 652.150.

5.    Fifth Claim for Relief – Mitchell against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Giorgio's Holding, Inc., All Stars Holding, Inc., and Pine St. Pub, Inc.:

A.  Unpaid wages and penalty wages, in an amount to be determined at trial, as well as any equitable relief deemed appropriate by the court, in addition to reasonable attorney fees and costs, pursuant to ORS 652.200, ORS 652.140 and ORS 652.150.

6.    Sixth Claim for Relief – Ramirez against Amy Lin, Raymond Lin, Windjammers Holding, Inc., Pine St. Pub, Inc., Mario's Holding Company, All Stars Sports Grill Lancaster, Inc.:

Page 20 of 21 – COMPLAINT

A.  Unpaid overtime wages, unpaid wages (including unpaid minimum wages), and

penalty wages, in an amount to be determined at trial, as well as any equitable

relief deemed appropriate by the court, in addition to reasonable attorney fees and

costs pursuant to ORS 652.200, ORS 652.140 and ORS 652.150.

DATED this 25 day of March, 2014.

/s/ Jon Weiner
Jon Weiner, OSB #993944
jweiner@nw-attorneys.com
Law Office of Jon Weiner
1595 Commercial Street NE
Salem, OR 97301
Tel: (503) 585-2450
Fax: (503) 585-0205
Attorney for Plaintiffs

Page 21 of 21 – COMPLAINT